ILLINOIS CENT. R. CO. *et al. v.* WILLIAMS.*

(Division B. Dec. 6, 1926.)

[110 So. 510. No. 25914.]

1. RAILROADS. *Railroad's negligence as to child at crossing held for jury.*

   Evidence, in action against railroad for injuries to child, struck by train at public crossing, *held* to present question for jury.

2. RAILROADS. *Railroad must regulate speed of train over frequented crossing with reference to conditions.*

   Railroad had duty to regulate speed of train over public crossing in a municipality much frequented by traveling public, with reference to existing conditions.

3. RAILROADS. *Railroad is charged with notice of parked freight cars, obscuring view of engineer as to persons on crossing.*

   Railroad is chargeable with notice of parked freight cars on passing track near public crossing, in violation of one of its rules made for safety of traveling public, and that cars so situated will obscure view of engineer and fireman as to person entering on such crossing.

4. DAMAGES. *Child of less than three years may recover for mental anguish.*

   Instruction authorizing recovery for mental anguish, endured by child of less than three years as result of injury, *held* proper, since child is capable of suffering mental pain as result of physical injury.

5. RAILROADS. *Instruction on railroad's duty to maintain lookout in approaching crossing held applicable.*

   Where testimony, in action against railroad for injuries, raised issue for jury relative to whether engineer and fireman were on lookout, instruction that defendant had duty to maintain reasonable lookout in approaching public crossing in municipality *held* applicable.

6. DAMAGES. *Twenty thousand dollars for fractured skull, suffered by child, and from which there had been seeming recovery, held excessive, and reduced to fifteen thousand dollars.*

   Twenty thousand dollars for injuries to child less than three years, consisting of fractured skull from which there had been a seem-

ingly complete recovery, *held* excessive, and reduced to fifteen thousand dollars.

7. DAMAGES. *Injury must be proven with reasonable certainty.*
An injury for which recovery can be had must be proven with reasonable certainty.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., p. 874, n. 48; Damages, 17 C. J., p. 753, n. 46; p. 759, n. 86; p. 830, n. 48; p. 1096, n. 91; Railroads, 33 Cyc., p. 967, n. 99; p. 971, n. 32; p. 972, n. 33; p. 1098, n. 96; p. 1137, n. 22; p. 1138, n. 25. On duty of railroad company as to speed of train at public crossing, see 22 R. C. L. 1013. On excessiveness of verdicts in action for personal injuries other than death, see annotation in L. R. A. 1915F, 30; 8 R. C. L. 674; 2 R. C. L. Supp. 638; 4 R. C. L. Supp. 567; 5 R. C. L. Supp. 480; 6 R. C. L. Supp. 521.

APPEAL from circuit court of Lafayette county.
HON. T. E. PEGRAM, Judge.

Action by Murray Williams, by his father and next friend, E. L. Williams, against the Illinois Central Railroad Company and others. Judgment for plaintiff, and defendants appeal. Affirmed on condition that plaintiff enter remittitur; otherwise reversed and remanded for a new trial on question of damages.

*May, Sanders & McLaurin* and *R. V. Fletcher,* for appellant.

I. It was error for the court to refuse the peremptory instruction requested by each of the defendants. The facts show that at the time and place when and where the appellee was injured the train that struck him was being operated in a lawful manner. The testimony makes it clear that the engineer gave the necessary signals of the approach of the train; that he and the fireman were both keeping a lookout and that the little boy, the appellee, suddenly appeared upon the track in front of the train so close that it was impossible for the engineer to prevent striking him.

If the engineer or the fireman saw the child, or could have seen him, in time to have prevented striking him and the engineer had neglected to do everything possible to prevent striking him, liability would have attached under the last clear chance doctrine; but there is no dispute in the record that the engineer and fireman were keeping a lookout; that they did not see the child and could not see him until it was too late to do anything to avert the accident. The rule is too well settled to justify extended citation that before the railroad company can be held liable for failure to exercise every effort to avert injury the peril of the injured person must be apparent to those in charge of the operation of the train, or else that it could have been known by the exercise of the proper lookout. There is no testimony in the record to show the existence of such a condition at the time of this accident.

The railroad company is not an insurer of the safety of persons on crossings, even though they be children of tender years. The operation of trains at a reasonably high rate of speed through small villages, such as Taylor, is necessary and recognized by law. It would seem from this whole record that the negligence of Murray Williams' parents, which may not be imputed to him, and not the alleged negligence of the railroad company and the engineer, is the real cause of his injury.

What constitutes a dangerous and rapid rate of speed is more or less uncertain, depending upon the circumstances of each particular case. If, as we contend, the train on this occasion was being lawfully operated and nothing could have been done by the engineer to avert the accident after the child appeared upon the crossing, then both defendants were entitled to the peremptory instruction as requested and it was error for the court to refuse to so instruct the jury.

II. The instructions for plaintiff were erroneous and misleading. The fourth instruction given for the plain-

tiff, as it appears in the record, was on the measure of damages. By that instruction the court told the jury that if they found for the plaintiff, in assessing damages they should take into consideration, among other things, "any mental and physical pain and suffering which the testimony may show he has endured, or will endure, if any, as the proximate result of the negligence of defendant."

The first instruction given for the plaintiff was to the effect that he was not guilty of any negligence in going upon the crossing where he was struck and injured. This instruction was doubtless given upon the theory that a child not quite three years old was incapable of being guilty of contributory negligence because at that age he had not sufficient mental capacity to think about, appreciate and understand things; and yet in the same breath the court instructed the jury that the plaintiff was entitled to compensation for mental anguish which he had endured. *N. K. N. T. R. R. Co. v. Miller,* 61 S. W. 978, 25 Tex. Appeals 460. For discussion of mental anguish, see *Hancock v. Western Union Telegraph Co.,* 69 L. R. A. (N. C.) 403.

If the instruction in this case had limited the right of recovery to physical pain endured and to mental suffering which might hereafter result and such permanent injuries as had been shown, it might not be open to criticism, but when the court told the jury that they might award compensation for mental anguish already endured, an element of damages was injected into the case which could not possibly exist. This erroneous instruction may in part account for the very large verdict.

The next instruction for the plaintiff undertook to define the degree of care devolving upon the railroad company in the operation of its trains through the village of Taylor and over the crossing where the accident took place. This instruction in substance told the jury that the servants of the railroad company in charge of its train were under duty to maintain a reasonable lookout

when approaching the crossing in question and to run the freight train over such crossing at a reasonable rate of speed, and if the jury should find that they negligently breached their duty and the plaintiff was struck as the proximate result thereof, they should find for the plaintiff. The special vice in this instruction lies in the fact that it left to the jury to decide a question that was not in dispute; namely, whether or not the defendants failed to keep a lookout when aproaching the crossing. Both the engineer and fireman testified that they were in their proper places in the cab keeping a sharp lookout and did not and could not see Murray Williams until he was right on the crossing in front of the train.

This court in common with other courts has on more than one occasion held that a jury is not warranted in disregarding uncontradicted testimony where there is nothing to impeach the testimony, and the trial court is not warranted in submitting to the jury for determination a fact not in dispute. See *N. O. M. & C.* v. *Harrison*, 105 Miss. 18; *Stewart* v. *Coleman*, 81 So. 653. This instruction, therefore was erroneous, misleading and prejudicial to the defendants.

For cases where it has been held error to give instructions not predicative of evidence see the following: *Mobile, etc., R. R. Co.* v. *Francis*, 9 So. 508; *King* v. *Levy*, 13 So. 282, 13 So.. 283; *Orrick* v. *Stewart*, 12 So. 824; *Malone* v. *Robinson*, 12 So. 709; *Trager* v. *Shepherd*, 18 So. 122; *Carraway* v. *Wallace*, 17 So. 930; *Robinson* v. *Spears*, 21 So. 554; *Alabama, etc., R. R. Co..* v. *Overstreet*, 85 Miss. 78, 37 So. 819; *Alabama, etc., R. R. Co.* v. *Hayne*, 76 Miss. 538, 24 So. 907; *Southern R. R. Co.* v. *Vaughn*, 86 Miss. 367, 38 So. 500; *Burnley* v. *Mullins*, 86 Miss. 441, 38 So. 635; *Am. Cent. Ins. Co.* v. *Antrim*, 88 Miss. 518, 41 So. 257; *Mobile, etc., R. R. Co.* v. *Jackson*, 92 Miss. 517, 46 So. 142; *Alabama, etc., R. R. Co.* v *Baldwin*, 52 So. (Miss.), 358; *Bank of Newton* v. *Simmons*, 96 Miss. 17, 49 So. 616; *N. O., etc., R. R. Co.* v. *Williams*, 96 Miss. 373, 53 So. 619; *Cumberland Tel. & Tel. Co.* v. *Cosnahan*, 105 Miss. 615.

III.  The verdict of the jury was so excessive as to indicate passion, prejudice, or undue sympathy and should have been set aside.  It is well settled law that a verdict may not be founded upon speculation and conjecture.  There must be a reasonable certainty that the damage claimed has resulted or will result from the injury complained of.  The rule in such cases is stated in 8 R. C. L. 438 and a long list of cases in the note, and for instances where the judgment was either set aside or reduced because excessive, see: *Vicksburg, etc., R. R. Co.* v. *Lawrence,* 78 Miss. 86; *R. R. Co.* v. *Statham,* 42 Miss. 607; *Pullman Co.* v. *Anderson,* 119 Miss. 791; *R. J. Reynolds Tobacco Co.* v. *Loftan,* 99 So. 13; *Woolworth Co.* v. *Voking,* 100 So. 3; *Jackson Coca Cola Bottling Co.* v. *Renna,* 97 So. 674; *Payne* v. *McNeely,* 123 Miss. 248; *Morris* v. *A. & V. Ry. Co.,* 103 Miss. 511.  See also Cyc. 839.

The judgment ought to be set aside and the cause reversed.

*Geo. T. & Chas. S. Mitchell* and *J. W. T. Falkner,* for appellee.

I.  Counsel for defendants assert that there was no negligence shown on the part of the defendants and urge that the court below should have peremptorily instructed the jury to find for defendants.

The negligence in this case is based upon the fact that the train in question was, under conditions known to the defendants or under conditions that should have been known to them, by the exercise of reasonable care and diligence, run over and across the frequently travelled public streets of the incorporated village of Taylor at a negligent and dangerous rate of speed, and that as a proximate result of this negligence, the injury in question was inflicted.

The testimony showed, or at least tended to show, that at the time of the infliction of the injury, the train

was being run over the crossings in question without giving the statutory signals; that is, ringing the bell or blowing the whistle.

In the second place, regardless of whether or not the statutory signals were given, the train was run over the frequently travelled crossings aforesaid where travellers should have been expected, at a negligent rate of speed.

In the third place, the railroad company was negligent in placing box cars near the crossing at which the injury occurred in such a manner as to obstruct the view of the trainmen to the east part of the crossing. In the fourth place, at the time the injury occurred a part of this same train was running through the prohibited area of the town of Taylor, as fixed by the railroad commission, at a greater rate of speed than six miles per hour in direct violation of the law. Any one or all of the above elements of negligence were for the jury to determine and for them to say whether or not such negligence was the proximate cause of the injury.

Surely, it will not be disputed that the failure to give the required signals at crossings is negligence and such negligence as will support a recovery on the part of any person injured as a proximate result thereof. See *Skipworth* v. *R. R. Co.*, 48 So. 964; *R. R. Co.* v. *Crominarity*, 38 So. 633.

It is true that two witnesses for the defendant testified that the signals were given; yet three disinterested witnesses testified in substance for the plaintiff that they were not given. Under this situation, it would have been highly improper for the court below to have accepted the testimony of the witnesses for the defendant as being true and that of the witnesses for plaintiff as being false. All conflicts in the evidence as to questions of fact are for the jury to determine, not the court. *Skipworth* v. *R. R. Co.*, 48 So. 964, is very applicable to this feature of the case.

We have here a case where, according to the evidence for plaintiff, this train was run across this public street crossing at a rate of speed variously estimated at from twenty to thirty-five miles per hour, without warning and without the taking of precautions, although those in charge of the train were under the duty to anticipate the presence of persons at said crossing. This under the law constitutes negligence. See: 33 Cyc., Railroads, 971; 22 R. C. L., Railroads, Nos. 243-1012; *L. & N. R. R. Co.* v. *McNary,* 17 L. R. A. (N. S.) 224; *R. R. Co.* v. *Lee,* — So. 232; *Hines* v. *Moore,* 87 So. 1; *R. R. Co.* v. *French,* 69 Miss. 121; *Broussard* v. *R. R. Co.,* 73 So. 606.

We do not deem it necessary to cite but one authority to this court in support of the proposition that where a railroad company itself caused the view of the trainmen to be obstructed, it then devolves upon the railroad company to take such care and use such precautions as the dangerous nature of the crossing requires. 3 Elliott on Railroads, 1656; *R. R. Co.* v. *Shelton,* 26 Atl. 937; and other authorities there cited.

We submit that under the evidence for plaintiff and that of defendants which corroborates the evidence of plaintiff in certain particulars, inexcusable and negligent conduct on the part of the defendants was shown. All these questions, under the evidence, were questions for the jury to pass upon and not the court. The court was eminently correct in submitting the issues involved in this case to the jury. 3 Elliott on Railroads, Nos. 1656 and notes; *Hines* v. *Moore,* 87 So. 1; *Skipworth* v. *R. R. Co.,* 48 So. 964; *R. R. Co.* v. *Lowe,* 73 Miss. 203.

II. Counsel for appellants then assign as error the giving of two instructions for the plaintiff, the first being an instruction on the measure of damages; and the second being an instruction on the degree of care owed appellee at the crossing in question.

Counsel for appellants complain that one instruction tells the jury that they could, in assessing damages, take into consideration any mental anguish endured by the

little child or any mental anguish that he might endure in the latter years, if any. This instruction does not tell the jury that the child suffered mental anguish and they must compensate him therefor. It simply tells them that if they find that any mental anguish had been endured by the child, they might compensate him therefor. It was for the jury to first find from the evidence whether any mental anguish had been endured; and if they found that there was, then they were under their oaths to compensate him therefor.

Mental anguish does not consist solely of the realization that one is crippled, deformed or scarred. This is only one of the elements of mental anguish. Another element of mental anguish is sensation of pain resulting from the physical pain and is far more a greater element in mental anguish than the realization of one's crippled condition. Fright is a sensation that is caused from pain and it is also a sensation caused by reason of shock, terrifying objects and other things. All the authorities support this contention.

We feel that it has been conceded by the authorities that an infant can experience mental anguish and especially when same is accompanied by severe physical suffering. See *R. R. Co.* v. *Sauter*, 103 S. W. 201; 17 C. J., Damages, 830. However, conceding for the sake of argument that an infant cannot experience mental anguish, yet this instruction would not be error.

We take issue with counsel for appellants that the question as to whether or not a reasonable lookout, or any lookout at all, was kept at the crossing in question, was an issue in the case. If the witnesses for the plaintiff are to be believed, the jury could well have found that the train was propelled across the crossing without the engineer or fireman on the lookout. The instructions given the plaintiff were proper in every respect under the evidence.

III. Counsel for appellants next complain of the amount of the verdict and urge that this should cause a

reversal. The verdict in this case is not excessive when we take into consideration the great and serious injury sustained by the child.

His skull was practically split open, one of the fractures running to the left eye and the other fracture to the base of the skull. There was a hole knocked in his head at the fracture and some of the brain ran out at this place. A piece of the skull has been removed about two inches long and as wide as two fingers. This opening in the skull has not closed and never will. The child can never play as other children play, but will constantly have to protect himself from a lick on that part of the head where this opening remains. A blow on this part of his head would kill him. He cannot stand the hot sun as well as if he had not received this injury. In addition to all of this, it is certain that the poor little child will always be exposed to epilepsy and must go through life with this constant dread before him.

This court has repeatedly had to deal with such issues as the one involved here; namely, the excessiveness of verdicts. The leading case in this state is *Hardy* v. *R. R. Co.,* 41 So. 505, where the rule is laid down by Chief Justice Whitfield.

This court will not interfere with the finding of a jury on the question of damages, unless the verdict is so excessive as to shock the conscience or to evince prejudice, passion or corruption on the part of the jury. See *S. H. Kress & Co.* v. *Makline,* 77 So. 866; *R. R. Co.* v. *Hays,* 101 So. 548; *Tampa Electric Co.* v. *Bazemore,* 96 So. (Fla.), 297.

Argued orally by *J. O. S. Sanders,* for the appellants, and *Geo. T. Mitchell,* for the appellee.

Anderson, J., delivered the opinion of the court.

Appellee, Murray Williams, a minor, by his father and next friend, E. L. Williams, brought this action in

the circuit court of Lafayette county against appellant, the Illinois Central Railroad Company to recover damages for a personal injury received by appellee, alleged to have been caused by the negligence of appellant, and recovered judgment in the sum of twenty thousand dollars. From this judgment appellant prosecutes this appeal.

The court refused appellant's request for a directed verdict. That action of the court is assigned as error. Appellee's evidence tended to establish the following case:

Appellee was struck on a public crossing in the village of Taylor by one of appellant's south-bound freight trains. His skull was fractured, necessitating a surgical operation. The public crossing where appellee was struck by the train was about four hundred feet south of appellant's depot at Taylor. The crossing was much frequented by the traveling public. By order of the Railroad Commission, the speed limit statute for trains in municipalities was suspended as to that crossing. The injury occurred in the daytime. Several eyewitnesses testified. The father of appellee owned a home in which he lived with his family adjoining appellant's right of way on the east near the crossing where the injury occurred. At the time of the injury, there stood twelve to fourteen feet north of the crossing, on the east side of appellant's main line on a passing track, some freight cars. These freight cars were placed and left that near the public crossing in violation of a rule of appellant. The engineer in charge of the train which struck appellee testified that a rule of the company prohibited cars from being parked nearer than sixty feet of any public crossing. Appellee and his sister, who was about ten years of age at the time of the injury, left their home, on the east side of the railroad right of way, and were proceeding over the crossing where the injury occurred to the west side of the tracks and right of way. The little girl had crossed over when the appellee was

struck by the train. She turned after crossing over and appeared to be waving appellee not to come across. This occurred as the train was approaching, at a speed estimated by the witnesses to be from eighteen to thirty-five miles per hour. There was nothing to prevent the engineer and fireman on the train from seeing the little girl thus beckoning to appellee, if they were on the lookout. When the train reached the crossing, appellee was nearly across—one or two more steps west would have taken him beyond the sweep of the train. Neither the engineer nor the fireman saw appellee until it was too late to do anything to prevent the injury. The freight cars parked twelve to fourteen feet above the crossing on the east side of appellant's main line obscured appellee from their view until he emerged from behind the obstruction and entered the crossing over appellant's main line. The engineer running the train never saw appellee at all. He was in his seat on the west side of the cab. His view was obscured by the freight cars referred to, until the train was so close to the crossing that his view was obscured by his engine. The fireman saw appellee only a moment before he was struck. He so testified, and the physical facts corroborated his testimony in that respect. But appellee's testimony tended to show that, if both the engineer and fireman had been on the lookout, they would have seen appellee's little sister on the west side of the crossing beckoning to appellee not to cross over. Appellee's testimony tended to establish that the statutory signals were not given for the crossing, while appellant's tended to establish the converse. The amended declaration is in two counts. The first count charged that the injury was caused by appellant's negligence in running its train over the crossing without giving any warning of its approach. The second count charged that the injury was caused by the running of appellant's train at a high and excessive rate of speed, over a much frequented public crossing, without any warning.

We think it clear that the question of liability was one for the jury. It was the duty of appellant to regulate the speed of its train over the crossing where the injury occurred with reference to the conditions existing at the time. Those conditions were that the crossing was a public crossing in a municipality and much frequented by the traveling public. Appellant was chargeable with notice that on its passing track northeast of the crossing there were parked freight cars in violation of one of its rules made for the safety of the traveling public; that the freight cars were so situated that a person traveling from east to west would be obscured from the view of the engineer and fireman on a south-bound train until the train was so close that it would be impossible to stop it and avoid injuring such a person entering upon the crossing. Whether the train at the time of the injury, under the conditions and circumstances existing, was running over the crossing at an excessive and dangerous rate of speed to the traveling public we think was a question for the jury and not for the court; and, furthermore, the jury would have been justified in finding that the engineer and fireman were not on the lookout as they approached the crossing, although they testified that they were, for there was testimony in the case which tended to show that, if they had been on the lookout, they could and would have seen appellee's little sister waving to him not to cross over.

By the fourth instruction for appellee, the court told the jury that, if they found for the plaintiff, in assessing damages, they should take into consideration, among other things, "any mental and physical pain and suffering which the testimony may show he has endured or will endure, if any, as the proximate result of the negligence of defendant." Appellant's criticism of this instruction is the language "has endured" (italics ours). Appellant's position is that a child two or three years of age could not endure mental anguish, and therefore the instruction authorizing as an element of damages men-

tal anguish *already endured* was error and misleading to the jury, and probably influenced their verdict. Appellant bases its argument on the definition of mental anguish given by the Texas court in *Railroad Company* v. *Miller,* 25 Tex. Civ. App. 460, 61 S. W. 978. That court held that mental anguish, for which recovery might be had in an action for personal injuries, included not only the mental sensation or pain resulting from the physical injury, but also the purely mental suffering experienced by the injured person in contemplating his crippled condition and brooding over his future prospects. Appellant says that the evidence shows that appellee was of such tender years and immature mind that he was incapable of contemplating his crippled condition and brooding over his future prospects. That is doubtless true, but the instruction in question did not so define mental anguish. According to the Texas court, that is only one of the elements of mental anguish. Certainly it is true, that, regardless of how immature a child is, it is capable of suffering mental pain as the result of physical injury. Mental anguish in some degree necessarily follows physical pain.

A child, though incapable of reasoning, will cry out as the result of physical pain. Mental anguish exists whether the child can recognize it and reason about it or not. The Texas court, as we understand it, did not hold that there could be no mental anguish growing out of a physical injury for which recovery could be had except such as resulted from the injured person's contemplating and brooding over his crippled condition. It simply held that, in a proper case, that would be one of the elements of mental anguish. We think the instruction criticized by appellant embodied the correct principles of law.

The court gave appellee an instruction which told the jury that it was the duty of appellant to maintain a reasonable lookout when approaching the crossing. Appellant's contention is that the instruction had no appli-

cation to the undisputed facts of the case, and was there-
fore calculated to mislead the jury. Both the engineer
and fireman testified that they were on the lookout as
they approached the crossing. Appellant argues that
their testimony was undisputed and should have been ac-
cepted by the jury as true; that the instruction criticized,
therefore, submitted that question to the jury when it
was not a question in the case, and to do so was harmful
to appellant. The engineer and fireman testified that
they did not see appellee's little sister on the west side
of the railroad tracks apparently waving to appellee not
to attempt to cross. Appellee's testimony tended to
show that, if the engineer and fireman had been on the
lookout, they could and would have seen her. We think
it was an issue for the jury as to whether the engineer
and fireman were on the lookout as they approached the
crossing.

Appellant assigns as error the action of the court in
refusing to set aside the verdict on its motion for a new
trial, on the ground that the verdict was so excessive as
to evince passion and prejudice on the part of the jury.
It is always difficult for a court to determine whether the
verdict of a jury was influenced by passion or prejudice.
Appellee was two years and eight months of age at the
time of his injury. The trial took place a little less than
two years after the injury. Appellee's skull was frac-
tured; he was taken to a hospital in Oxford and remained
there about twenty days. For several days after being
taken to the hospital he was unconscious. His skull was
fractured on the left side near the top of his head, and
a surgical operation was performed on his head in which
a piece of the skull about two inches long, and the width
of two fingers, was taken out. A small particle of his
brains came out. Appellee's mother and father testified
that his recovery seemed complete, and that he was more
robust and apparently in better health than he was be-
fore his injury. The only evidence of physical suffering
testified to by them was that he was restless at night,

and sometimes would put his hand up to his head and say that his head hurt him.  Dr. Bramlett, who operated on appellee, testified that there would always be a soft place on appellee's head where a part of the skull had been removed; that in his judgment the soft place would never grow up; in other words, that the skull would never grow out and cover the brain as it did before, that the only covering the brain had at the place where the skull was removed was the skin and some kind of growth under the skin over the brain.  Dr. Bramlett testified that a serious lick on this soft place on appellee's head might either cause death or epilepsy; that it might make him subject to sunstroke, and might be dangerous for him to engage in violent physical effort.  He testified that appellee appeared to be on good physical condition —in fact, that there had been a complete recovery from his injuries.

It will be seen therefore, from Dr. Bramlett's testimony, that he was uncertain as to appellee's future handicap growing out of the injury; that it was problematical.  An injury for which recovery may be had must be proven with reasonable certainty.  There was no evidence of any mental deficiency resulting from the injury.  Fifteen thousand dollars at six per cent. interest would yield seventy-five dollars a month, aggregating nine hundred dollars a year.  A verdict in that sum, we think, would be nearer in line with the verdicts which this court has permitted to stand where the injuries were of like degree and permanency.  We think the verdict is so large that it shows that the jury were unduly influenced by sympathy for the appellee, and was therefore the result of passion or prejudice.  If the appellee will enter a remittitur of the judgment down to fifteen thousand dollars within ten days after the opinion goes down in this case, the judgment will be affirmed for that amount; otherwise the cause will be reversed and remanded for a new trial on the question of damages alone.

*Affirmed with remittitur; otherwise reversed and remanded.*