DONALD, ADMR. *v.* GULF, MOBILE & O. R. R. Co.

April 19, 1954

No. 39200 61 Adv. S. 9 71 So. 2d 776

*Douglas D. Shands,* Tupelo; *Satterfield, Ewing, Williams & Shell,* Jackson, for appellant.

716

*Blair & Anderson,* Tupelo, for appellee.

LEE, J.

Foster Donald, Administrator of the Estate of Charles Clifton Donald, deceased, filed suit against the Gulf, Mobile & Ohio Railroad Company to recover damages for the alleged wrongful death of the decedent. The jury returned a verdict for the defendant, and the plaintiff appealed.

The injury and death arose out of a collision at a grade crossing in Guntown, Mississippi, between an automobile in which the decedent was riding and the Rebel train of the defendant.

The railroad, at this point, runs in a northerly and southerly direction and crosses a street which runs east and west. The approach from the west is downgrade. There is a deep cut on both the west site of the railroad tracks and on the south side of the street.

It was undisputed that the operatives of the northbound train could not see an automobile approaching the crossing from the west until it was very close to, or practically on, the tracks. It was likewise undisputed that the driver of such automobile could not see southward until he was very close, or within 8 or 10 feet of the tracks.

Johnny Gardner, the driver of the 1940 Ford automobile, testified that, as he approached from the west, he

was "driving slow easing down to the crossing, and looked to see if the track was clear before I started off, and I started across and seen the train and I cut it to the left, and it hit right on the right front." He was making between 10 and 20 miles an hour and had good brakes. He denied that he ran into the side of the train. He did not see the light of the train and heard no whistle blowing or bell ringing. His car windows were down. L. C. Gardner, a passenger in the car, testified that he heard no whistle or bell, but he saw the light of the train when the automobile came within 20 or 25 feet of the tracks.

The railroad employees admitted that the train was traveling at a speed of 55 miles an hour. They testified that the whistle was blown and the bell was rung until the engine passed over the crossing; and that the equipment met every requirement of the law.

According to the railroad's proof the automobile ran into the side of the train. It struck and bent the steps on one of the cars about 175 feet from the front of the engine; and the impact caused the train to break into two parts. Casey, the fireman, testified that, about the time the train got "right on" the crossing, he looked west and saw the automobile which, he *imagined,* was 60 or 70 feet away.

Obviously this was a very dangerous crossing. Compliance with Section 7776, Code of 1942, would not necessarily prevent a collision at this point. In 74 C. J. S., Railroads, Section 711, page 1306, it is said: "The test of whether a railroad crossing is unusually dangerous has been said to be the ability of the traveler to observe the approach of a train from the direction in which it is coming; . . ."

It is clear that the perils of a dangerous crossing are increased or diminished in proportion to the speed of trains. See 44 Am. Jur., Railroads, Section 507, page 747, as follows: "The principle that if a crossing is

unusually dangerous, ordinary care requires the railroad company to meet the peril with unusual precautions, is particularly applicable where the dangerous condition results from obstructions to the view which prevent a traveler from seeing an approaching train until he is dangerously close to the track. In such a case, the railroad company has the duty of exercising caution commensurate with the situation to avoid collisions with travelers on the highway, as by a less amount of speed, or by increased warnings, or otherwise, * * *.''

The above principles were expressly or impliedly recognized and approved in the recent cases of N. O. & N. E. R. Co. v. Lewis, 214 Miss. 163, 58 So. 2d 486, and G. M. & O. R. Co. v. Scott, 216 Miss. 532, 62 So. 2d 878.

In Illinois Central R. Co. v. Williams, 144 Miss. 804, 110 So. 510, where the child was struck at a public crossing in the village of Taylor and the speed limit statutes for trains in municipalities were suspended as to that crossing, the Court said: ''Whether the train at the time of the injury, under the conditions and circumstances existing, was running over the crossing at an excessive and dangerous rate of speed to the traveling public we think was a question for the jury and not for the court; * * *.''

But by the Railroad's instruction No. 5, the court took away from the jury the question of speed, if the jury found that the automobile struck the train. It was as follows: ''The court instructs the jury for the Gulf, Mobile & Ohio Railroad Company that the plaintiff must prove by a preponderance of the evidence that the car in which Charles Clifton Donald was riding was struck by the train, known as the Rebel, and if the plaintiff does not show this by a preponderance of the evidence, then you will return a verdict for the Gulf, Mobile & Ohio Railroad Company.''

That instruction was effective to lay down the proposition that, even if the driver of the automobile, in the

exercise of reasonable care, was unable to see the train until he was within 8 or 10 feet of the tracks, and was then unable to stop, yet, if the train was running at such high speed that its engine could pass over the crossing a moment or two ahead of the automobile and thus cause the automobile to run into the side of the train, there was no liability. The instruction was erroneous. Actually, if the speed of the train had been less, the automobile might reasonably have passed over the crossing without any collision at all.

It is true that two of plaintiff's instructions submitted the question of excessive speed as a proximate cause; but the above mentioned erroneous instruction was in direct conflict with those announcements.

But appellee contends that the automobile struck the train after about 175 feet of it had already passed over the crossing, and that the case must be determined by the principles which have been announced in such cases as Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750; Gulf, M. & N. R. Co. v. Kennard, 164 Miss. 380, 145 So. 110; Spilman v. Gulf & S. I. R. Co., 173 Miss. 725, 163 So. 445; Gulf, M. & N. R. Co. v. Addkison, (Miss.), 194 So. 593, and Summerford v. Illinois C. R. Co., (Miss.), 193 So. 264.

In the Holifield case, supra, the cut of box cars had been left standing across the street. In the Kennard case, supra, the freight car had blocked the crossing for about three minutes. In the Spilman case, supra, the train traveling at a speed of 3 or 4 miles an hour, had occupied the crossing when the automobile was more than 1,000 yards away. In the Addkison case, supra, the plaintiff saw the cars 150 to 200 feet before he reached the crossing. In the Summerford case, supra, the plaintiff drove his truck into the side of a box car of the train which had been standing motionless on the crossing for 4 or 5 minutes.

In those cases, the crossings had been occupied by the cars for a substantial period; and there was no peculiar environmental factor to obstruct the view of the drivers. Hence, the rule, which has been worked out in those cases, does not apply to a mere 2 or 3 seconds of previous occupation, as shown by the circumstances in this case.

On the contrary, compare New Orleans & N. E. R. Co. v. Hegwood, 155 Miss. 104, 124 So. 66, in which case recovery was allowed when the automobile, driven at a high rate of speed, ran into a locomotive on the crossing.

Defense instruction No. 14 contained the same erroneous principle which is found in instruction No. 5, supra.

 Defense instruction No. 11 in fact authorized the jury to find that the train's occupation of the crossing for 2 or 3 seconds was sufficient warning. Obviously this was erroneous under the circumstances in this case.

In Illinois Central Railroad Company v. Williams, supra, the speed of the train was in dispute. Some witnesses estimated it as high as 35 miles per hour while others put it as low as 18 miles. Although the statutory limitation of speed in municipalities did not apply, the Court held that it was for the jury to say whether or not the speed of the train at the time and place then in question constituted negligence.

 In the case here, there was likewise no statutory limitation of speed. But the proof was conclusive that the crossing was a highly dangerous one and that the speed of the train was 55 miles per hour. Under such circumstances there is no escape from the conclusion that the operation of the train over that particular crossing at a speed of 55 miles per hour constituted negligence. Whether such negligence proximately caused or contributed to the collision and the consequent death of the decedent was, of course, for the jury under proper instructions.

It follows therefore that the cause must be and is reversed and remanded for a new trial.

Reversed and remanded.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.