SILLS, et al. *v.* ILLINOIS CENTRAL RAILROAD COMPANY, et al.

No. 42616          March 11, 1963          150 So. 2d 521

*Butler, Snow, O'Mara, Stevens & Cannada, Sullivan, Sullivan & Keyes,* Jackson, for appellants.

*Joseph H. Wright, John W. Freels, Wence F. Cerne,* Chicago, Ill.; *Crawley, Brooks & Guyton,* Kosciusko, for appellees.

LEE, P. J.

This was an attachment suit filed in the Chancery Court of Attala County by Mrs. Billie Durden Sills, for herself and as mother and next friend of her three minor

children, against the Illinois Central Railroad Company and T. M. Rogers to recover for the death of their husband and father on October 24, 1960, which resulted from a crossing collision between a truck, operated by the decedent, and a work train of the defendant Railroad Company, operated by Rogers as the engineer.

In their bill of complaint it was charged that the collision occurred at an extraordinarily dangerous crossing which required more than ordinary warning; that the speed of the train was excessive and dangerous under the circumstances; that the operatives thereof did not keep a proper lookout; and that they failed to give the statutory signals and other necessary warning signals because of the character of such crossing. There were other general charges of negligence.

The defendants denied all of the material allegations of the bill. They alleged that they gave the statutory signals and all other reasonable and necessary warning; that the decedent negligently drove the motor vehicle upon the crossing at a dangerous and excessive rate of speed without proper care or caution, and at a time when he knew that the train could not be stopped; and that the death of the decedent was due solely to his own negligence.

At the close of the evidence, the chancellor made a finding of fact of the following tenor and effect: The decedent should have been fully apprised of the approaching train. The statutory signals were given. He ignored a person at the crossing who was seeking to flag him as the train approached. The crossing was not more than ordinarily dangerous. The sole cause of death was the decedent's own negligence. Upon such finding, he dismissed the bill of complaint. A decree in accordance with the finding was entered, and the complainants have appealed.

The scene of this accident was near Cynthia in Hinds County where the County Line road crossed the main

line of the Illinois Central Railroad at approximately right angles, the public road running generally east and west and the railroad north and south. For some distance east of the crossing, the road made a curve and was downgrade. A railroad warning sign was plainly visible on the north side of this road about a quarter of a mile east of the crossing. In addition, approximately eighty feet east of the crossing on the north side was a Mississippi Law Stop Sign; and within seventeen or eighteen feet of the crossing was another railroad cross sign on the same side of the road.

On this occasion, the decedent and Ben Reagan, both of whom were in the employ of Independent Linen Service of Mississippi, were en route to Yazoo City in a van type Ford truck, with Sills driving. Reagan had never traveled this road before, but assumed that his companion was familiar with it. The day was pretty, it was a little cold, and the car windows were raised. Reagan testified that they were traveling at a speed of forty miles or more per hour and the decedent was telling him about a football game which he attended in Little Rock the previous Saturday. The witness stated that he had observed none of the warning signs on the road east of the crossing. All of a sudden, the brakes were applied. At once he heard a train whistle. The vehicle at that time was within fifty or sixty feet of the track. He looked to his right but saw nothing. As he turned to the left, there was a sound like an explosion of dynamite. Later, he awoke some distance north of the crossing. Sills had been killed instantly.

Ralph Maddox, a county patrolman, arrived at the scene ten or fifteen minutes after the collision. The engineer told him that the speed of the train was thirty-five to forty miles an hour. He observed signs of damage to the locomotive on the steps, top rail and side of the engine. Skidmarks of the truck began sixty-six feet east of the railroad tracks and continued to the east

rail where they veered to the right. He described the crossing, the approaches, the location of warning signs, and took a number of photographs which were introduced in evidence. Certain other photographs, tendered by the Railroad Company, were vouched for as true representations. Sebe Reynolds, a civil engineer, made a plat of the intersection, and, in his testimony, detailed the distances at which persons and things might be seen over the area.

One witness, living about a quarter of a mile from the crossing, heard the train and the impact, but did not hear the whistle blow. Another, living about the same distance, was helping her children off to school. She did not hear the approach of the train or the blowing of the whistle, but said that, if the whistle had blown, she would have heard it. A sixteen year old girl, on her way to school, heard the crash but did not hear the train blow until it was about one hundred yards from the crossing.

The engineer testified that the train consisted of the locomotive, a car, and the caboose. Starting nine hundred feet before reaching the crossing, he blew two longs, a short, and a long. He began the ringing of the bell before the blowing of the whistle. The headlight was also burning. He saw the truck about ten seconds before the collision when it was about one hundred and fifty feet from the crossing and the train was about one hundred feet away. As soon as it appeared to him that the truck was not going to stop, he applied his emergency brakes, but this had little effect on the train in that short distance. The front end of the truck plowed into the side of the locomotive, rebounded clear, and rolled over several times. The fireman and conductor gave full corroboration as to the blowing of the whistle and ringing of the bell and their commencement at the whistling post, nine hundred feet south of the crossing, and to the application of the emergency brakes. The other

two members of the crew, brakemen, corroborated the engineer's testimony as to blowing the whistle for the required distance, but could not hear the bell as they were in the caboose. The train was brought to a stop about one hundred and sixty-five steps past the crossing.

Arthur Moore, who worked near the crossing, testified that he heard the train blow. He then saw the truck when it was within thirty or forty feet of the track. The driver did not stop and tried to turn down beside the track and ran into the train. His statement was largely corroborated by two other witnesses who were nearby.

Simpson Putnam, who lived at Clinton, in going to his work with M. T. Reed Construction Company, would pass over this particular crossing from the west. As he approached the crossing, he heard the train whistle. When he got to where he could see down the track, he pulled up a safe distance and stopped. He saw the truck as it came around the curve from the east and did not think it could stop at the speed at which it was traveling. He tried to flag it, but without avail. The train, in his opinion, was running thirty to thirty-five miles an hour, started to blow the whistle at the whistling post, and blew almost continuously.

In his finding of fact, the chancellor said that the decedent, when he was one hundred sixty-seven feet east of the crossing, could have seen a train one hundred and fifty feet south of the crossing, and that when he was 111.5 feet east of the Cynthia road, he could have seen a train two hundred and seven feet south of the crossing; that the train blew the whistle and rang the bell approximately nine hundred feet south of the crossing and continued to ring the bell and blow the whistle until the accident; that the crossing was not "more than ordinarily dangerous", and that the train had the right to occupy it; that the decedent knew the road that he was traveling, and, if he had been keeping the proper

lookout, he could have seen the train and stopped before reaching the crossing; that he hit the train near the front and while it was on the crossing; and that the sole cause of his death was his own negligence in not keeping a proper lookout, slowing down and stopping before entering the crossing.

The cases of Boyd v. I. C. R. R. Co., 211 Miss. 409, 52 So. 2d 21, and I. C. R. R. Company v. Williams, 242 Miss. 586, 135 So. 2d 831, are instances of where the "unusually dangerous" crossing rule has been applied; and in Donald v. Gulf, Mobile & O. R. R. Co., 220 Miss. 714, 71 So. 2d 776, because of that nature of the crossing and the speed of fifty-five miles an hour, it was held that the peremptory instruction for the railroad should not have been given. In these cases, as well as others mentioned in those opinions, it was held that it was for the jury or court, under the facts, to determine whether or not negligence in those regards proximately caused or contributed to the collisions and consequent damages.

Obviously the court cannot say as a matter of law that the crossing in this case was unusually dangerous or that it proximately caused or contributed to the collision.

(Hn 1) The chancellor tried this case as both judge and jury. The evidence for the complainants, if believed by the trier of facts, at most, made out a weak case. The evidence for the appellees, if believed, presented a strong defense. There was ample evidence to justify the finding of facts which the court reduced to writing. On no valid theory can it be said that it was against the great weight of the evidence or manifestly wrong. Consequently the decree must be affirmed.

Affirmed.

*Kyle, Ethridge, Gillespie and Jones, JJ.*, concur.