# SOUTHERN RAILWAY COMPANY IN MISSISSIPPI *v.* JESSE McLELLAN.

**1. RAILROADS.** *Track. Employe. Personal injuries.*

In an action against a railway company by a flagman for personal injuries sustained, while in the discharge of his duties, by stumbling over a piece of slag as he walked in the nighttime by the side of a moving train, in consequence of which he was thrown under the train and injured, it is error to exclude evidence that slag is commonly used by responsible railway companies in ballasting their tracks, the same being admissible to rebut any inference that the defendant was negligent in the mere use of that material as ballast, although the case involves the question of whether or not the pieces used were so large as to show negligence.

**2. SAME.** *Absence of accidents at same place. Evidence.*

In an action by an employe against a railway company for personal injuries alleged to have 'resulted from obstructions negligently placed near the track, it is error to exclude evidence offered by defendant that no previous accident had ever occurred at the same place.

**3. SAME.** *Cause of injury. Allegation of plaintiff. Evidence.*

In an action against a railway company for personal injuries alleged to have resulted from obstructions negligently placed near the track, it is error to admit evidence that the train was short of hands and the plaintiff, a flagman thereon, was performing extra duties, there being no claim that such shortness of hands contributed to the injury.

**4. SAME.** *Argument of defendant's ·attorney. Accident at same place. Absence of evidence.*

In an action by an employe against a railway company for injuries alleged to have· resulted from obstructions negligently placed near the track, it is permissible for the defendant's attorney to comment in argument on the absence of evidence of any previous accident at the same place.

5. SAME.  *Plaintiff's statement.  Exculpation.  Evidence.*

In an action by an employe against a railway company for injuries alleged to have resulted from obstructions negligently placed near the track, evidence that he stated just after receiving the injuries that their cause was purely accidental and no one was to blame, is admissible for such value as the jury may give it, although he probably meant to limit his exculpation to the employes on the train.

6. SAME.  *Poverty of plaintiff.  Evidence.*

In an action by an employe against a railway company for personal injuries, it is error to admit evidence to prove the poverty of the plaintiff.

FROM the circuit court of Montgomery county.

HON. A. T. ROANE, Special Judge.

McLellan, appellee, was plaintiff in the court below; the railway company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts were: Jesse McLellan, appellee, a young man about 20 years old, was employed by appellant as a flagman on one of its local freight trains, and had been so employed about two and one-half months when the accident for which this suit is brought happened. On October 31, 1900, this train got into Greenville at night, and got orders there to go out again that night. On its trip out, the train stopped at Huntington switch, a small station near Greenville, to take from the switch there some cars. In obedience to orders of the conductor of thi strain, appellee assisted in making the switch, and the cars were brought from the switch to the main line; the switch was closed, and appellee then closed a "knuckle" on the rear car, and gave the back-up signal, and proceeded on the outside of the rails, along the side of the roadbed, to make the coupling to the caboose which had been left on the main line. It was night, and while thus going along the track he stumbled on some obstruction, fell, and was thrown upon the track, and had both his hands crushed so that they had to be amputated. Appellee testified, describing the accident: "In backing up, I gave the back-up

signal, and stepped on the rock with my- left foot, and that threw me under the train; that is, my side under the left wheel." He also testified that the rock or piece of slag was, as near as he could get at it, very near as large as his head, at least as big as his double fist; that it was about a foot from the end of the cross ties. The evidence showed that a large number of pieces of slag had been lying for some time near the track at the place of the accident. There was a verdict and judgment for plaintiff for $20,000. Defendant's motion for a new trial was overruled. The errors assigned and other facts are indicated by the opinion of the court, which contains a further statement of the facts.

*Catchings & Catchings* and *S. M. Roane,* for the appellant.

The defendant should have been allowed to prove that slag was used as ballast by other responsible railway companies. There is no obligation resting upon railroad companies to use the best ways and appliances. · The true test in this case was: Was the roadway reasonably safe, or could the result complained of have been anticipated? 97 Ala., pp. 240, 251; 3 Elliott on Railroads, sec. 1263; *Atchison, etc., R. R. Co.* v. *Alsden,* 47 Ill., 200. The defendant should also have been allowed to prove that there had never been an accident to an employe in coupling or making switches at the point in question, and no employe had ever stumbled there, either in the daytime or at night. Watson on Dam. Per. Inj., p. 199; *Field* v. *Davis,* 27 Kan., 400; *Fletcher* v. *Bal. R. R. Co.,* 168 U. S., 135.

The admission of this evidence would have had the effect of rebutting any inference of negligence. The defendant had no · reason to apprehend an accident like the one in question, the arrangements made being such as experience had up to that time shown to be reasonably safe and suitable and sufficient to meet the requirements of its duty. Watson on Dam. Per. Inj.,

pp. 201, 202, 203; *Wabash R. R. Co.* v. *Locke,* 112 Ind., 404; *Crocheron* v. *North,* 56 N. Y., 656.

There was no allegation in the declaration that the extra duties required of plaintiff or the lack of a sufficient number of hands contributed to plaintiff's injuries. The admission of evidence on this head had the effect of creating a false issue and also of prejudicing the minds of the jurors against the defendant. The evidence should have been excluded on defendant's objection.

The court below also erred in allowing the plaintiff, over defendant's objection, to state that he was poor.. Watson on Dam. Per. Inj., p. 736; *Railroad Co.* v. *Roy,* 102 U. S., 451; *Barbour Co.* v. *Horn,* 48 Ala., 566; *Railroad Co.* v. *Binion,* 107 Ala., 645; *Shea* v. *Potero,* 44 Cal., 414; *Malone* v. *Hawley,* 46 Cal., 409; *Chicago* v. *O'Brennan,* 65 Ill., 160;; *Railroad Co.* v. *Power,* 74 Ill., 341; *Delphi* v. *Lowery,* 74 Ind., 520; *Parsons* v. *Lindsay,* 26 Kan., 426; *Shaw* v. *Barton, etc.., Corp.,* 8 Gray (Mass.), 45; *Manion* v. *Hogan,* 9 App. Div. (N. Y.), 98; *Schwanger* v. *Brooklyn,* 45 N. Y., s. P., 889; *Alberto* v. *New York, etc., R. R. Co.,* 118 N. Y.,77; *Gallion* v. *Laur,* 55 Ohio St., 392; *Penn. R. E.* v. *Brooks,* 57 Pa. St., 339; *Laing* v. *Colder,* 8 Barr. (Pa.), 479; *Missouri, etc., R. R. Co.* v. *Lyde,* 57 Tex., 505.

The court erred in excluding the statement of the appellee to Dr. Toombs, that nobody was to blame but himself. This was not an opinion in the sense in which that term is used in the law books. It was a declaration by the appellee against his own interests. In making it he was necessarily basing it upon facts within his knowledge. If the court is necessarily bound to accept as the truth the story told by him on the witness stand, then the admission of his declaration could not have affected the case. But suppose he did not state the facts as they occurred, and suppose that there were facts undisclosed by him, which would show that he alone was to blame; in that event his declaration would become important. Suppose it to be true,

RAILWAY CO. *v.* McLELLAN. [Mch., 1902.

as testified by the witness, Stensbery, that the appellee gave the signal to back, and then while the cars were moving, stepped in behind them to open the knuckle, and that in attempting to get out he stepped on the end of a cross tie or on a piece of slag between or just at the end of the cross tie and fell under the cars. Certainly in that case, he alone would have been to blame; and it may be that is how the accident occurred and that those were the facts in his mind when he made this declaration; or suppose that he was walking too near the end of the cross ties and stepped on a piece of slag between them, or just at the end, and stumbled and fell under the cars. In that event, clearly, he alone would have been to blame. Now, notwithstanding his story upon the witness stand, it may be that he was injured in some such way. If his declaration had been allowed to go to the jury, they would have been fully justified, if they had chosen to do so, in drawing the inference from the testimony of Stensbery that he had gone behind the cars while they were in motion, and in the hurry to extricate himself, stumbled over a piece of slag between the ties or at their end. Thus the court will see that his declaration might have been based upon facts, which, if allowed fairly to go to the jury, would have shown that he alone was to blame. By excluding this declaration, the jury was compelled to decide between his positive statement that he was walking along the side of the cars when he stepped upon a piece of slag and the inferential statement of the witness, Stensbery, that he had gone behind the car while in motion and tripped as he was extricating himself. If Stensbery's statement had been bolstered up by the declaration that plaintiff alone was to blame, it is just as likely as not that the jury would have found that he alone was to blame and that the company was not liable.

*Hill & Sisson,* for appellee.

It is assigned for error that the witness, Dr. Toombs, was not permitted to state that appellee said to him that his injury

was "a pure accident; that he blamed nobody," etc.    Our contention is that this is an opinion, a conclusion, and not competent.

Dr. Toombs has already testified that appellee told him how it occurred: "That he had given the back-up signal, was walking along the side of the track, stumbled over something, fell, and was run over by the cars and injured."    This was competent, because it was a statement of facts.

Appellant had the full benefit of appellee's statement of how the injury was caused; it was made to Conductor Elliott at the very time and place and repeated to him in the waiting room of the depot at Greenville; it was also made to George Stensbery, a brakeman, at the time and place of the injury. Then, some months afterwards, in Winona, one Mr. Lacy, a lawyer for appellant, had the statement repeated to him and reduced it to writing.

Dr. Toombs states that it is his duty, when called to see a person injured by the railroad, to first get his statement of how the injury was caused, reduce this to writing, and report to his employer.    He observed the rule in this case.    After finding the young man in a deplorable condition, both arms crushed and mangled, he put him on the witness stand before he did the operating table, and got his account of the injury.    Every admission against interest is competent, but we submit that it should be an admission of fact, not an admission of an opinion or a conclusion.

If appellee had made an admission of fact against his interest, and then added, by way of conclusion, that the railroad was wholly to blame, and that his injury was caused by the carelessness of the railroad; would that have been admissible against appellant?    Could we have had that given as the other part of the same statement?    This court has already announced that where part of a statement is competent and part incompetent, the "wheat must be separated from the chaff."    *Lipscomb* v. *State,* 75 Miss., 559; 53 Miss., 258; 53 Miss., 171;

40 Miss., 765; 69 Miss., 617; 69 Miss., 63; 1 Am. & Eng. Enc. Law (2d ed.), 714, and authorities cited.

Another assignment of error is that the verdict is excessive. When we consider that this young man, on the threshold of life, strong, healthy, and intelligent, earning about $60 a month, is now, and always will be, a helpless cripple, unable to do anything for himself, his "occupation gone," and no other business open to him. That he cannot even attend to the calls of nature without assistance, we can hardly say the verdict is excessive. Nothing can take the place of arms. We can substitute hands and arms for legs and feet, we can even use them for eyes, but no other members of the body can take the place of arms and hands. In the case of *Railroad Company* v. *Price,* 72 Miss., 862, this court permitted a verdict for $6,500 for the loss of one arm to stand. The appellee in the case at bar lost both. If we double the amount for the pain and suffering and mutilation we would then be entitled to $13,000 (provided $6,500 was the maximum for an arm in our state), but a man with one arm is ten times better able to care for himself and earn a livelihood than one who hasn't any. There are many profitable and honorable vocations he can pursue, and, ability or inability to earn a support in the future should be considered by the jury. In *Louisville, etc., R. R. Co.* v. *Thompson,* 64 Miss., 584, the appellee had his pelvic bone crushed, his thigh broken, in two places his leg was broken, and he was ·confined to his bed ten weeks. His leg, on recovery, was found to be two inches shorter, and he was otherwise seriously and permanently injured. The jury returned a verdict for $15,000. This was claimed to be excessive. The court in passing on this subject said: "It cannot be said that. the damages of $15,000 awarded by the jury are excessive. We apprehend few, if any person, would submit to the injury and suffering sustained by appellee for that sum."

It will be noted that Thompson recovered, and was able to go about his business, although crippled. McClellan can never

recover and go about his business. The rule is well settled in our state, and it is, we believe, the general rule "that in actions sounding in damages, where the law furnishes no legal rule of measurement save the discretion of the jury upon the evidence before them, courts will not disturb the verdict upon the ground of excessive damages, unless it be so flagrantly improper as to evince passion, prejudice, partiality, or corruption in the jury." 51 Miss., 79; 36 Miss., 660; 44 Miss., 466; 74 Miss., 810; 72 Miss., 862; 8 Am. & Eng. Enc. Law (2d ed.), 630 and 631. We mention some of the amounts given in the notes of the last authority cited, which were not held excessive. Where permanent and practically total disability was produced. 95 Cal., 279, $30,000; 18 Ill. App., 418, $25,000; 41 Ill. App., 270, $30,-000; 46 Minn., 439, $25,000; 24 Hun. (N. Y.), $30,000; 43 Hun. (N. Y.), $25,000. And where injury was very severe, but not permanent. 5 N. Y. App. Div., 91, $25,000; and in 18 Ill. App., 418, $25,000 for loss of both legs; 38 Ill. App., 33, $16,000 for permanent loss of leg by paralysis; 7 N. Y. Supp., 900, $18,000 loss of leg and use of arm; 89 Wis., 257, $10,000 for loss of arm; 15 Pa. Co. Ct. Rep., 430, $18,000 for loss of arm.

Argued orally by *S. M. Roane,* for appellant, and by *W. S. Hill* and *T. W. Sisson,* for appellee.

TERRAL, J., delivered the opinion of the court.

Upon the trial of the case in the circuit court the appellant offered several objections to the proceedings, which were over-ruled.

(1) It offered to show that the material used by it for ballasting its roadbed at Huntington switch, where the injury occurred, was like material as that commonly used by other railroad companies in ballasting their roads; and this offer was denied. (2) As a further circumstance relating to the question of negligence charged against it, it offered to show that no in-

jury had ever occurred at Huntington switch by reason of any defect in its way at that point; and this offer was also excluded. (3) The appellant objected to the proof made by the plaintiff that he was poor; had no property and no money. (4) It also objected to his evidence that at time of receiving his injury he was performing extra duties, the train being short of hands, though the injury is not claimed to have occurred in consequence thereof. (5) The defendant's counsel was denied the right to argue the want of any evidence of an injury along Huntington switch as a circumstance tending to show that the roadbed of the switch track was properly ballasted, to which he excepted. (6) And it complains that it was not permitted to prove that the plaintiff, shortly after his hurt, said to Dr. Toombs that no one was to blame for his injury, and that it was purely accidental. And in these several respects we think the appellant has reasonable ground of complaint.

The statement of McLellan to Dr. Toombs that his hurt (a sorely grievous one) was an accident, and no one was to blame for it, was probably intended to express his opinion that no one engaged in the operation of the train was to blame for it, and it perhaps did not relate to the question whether the track constituting Huntington switch was or not negligently constructed by reason of too large pieces of slag used in ballasting it; which is the gravamen of the complaint—the servants of appellant being entitled to a reasonably safe roadway; yet the statement of a party hurt in relation to it, in a suit for damages therefor, is always admissible in evidence for such consideration and value as the jury may give it.

The offer of defendant to show that other responsible railway companies used slag to ballast their roads tended to rebut any inference that the defendant was negligent in the mere use of slag on its roadbed, and for this purpose that item of evidence was admissible, leaving to the jury the question whether the method of the use of the slag was negligence or not. For the common use of slag for ballast by other

roads is an argument that the use of slag itself is not negli-
gence. It is its character as applied, as large or small, that
gives room to the consideration of negligence in its use. The
rejected evidence related in some degree to the general question
of negligence of the defendant company, and should have been
received.

The offer of defendant to show that no accident had ever
before happened at Huntington switch bore also, as we think,
upon the same question. Wats. Dam., sec. 156.

The evidence that the train was short of hands should not
have been admitted, as it is not insisted that that was a con-
tributing element to the injury.

And we do not perceive the ground of denying appellant's
counsel the privilege of arguing to the jury, as a circumstance
in its favor, the long and safe use of Huntington switch by its
trains after it had been ballasted with the slag in question.

That the plaintiff was poor was not a matter to be placed
before the jury. Wats. Dam., sec. 620. As some, or all, of
these errors may have entered into the finding of the jury, we
have, after long reflection, concluded that the case should be
reversed.

*Reversed and remanded.*