[Civ. No. 15931. First Dist., Div. One. Nov. 22, 1954.]

GLADYS JENSEN et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Rankin, Oneal, Luckhardt, Center & Hall, Duncan Oneal, Hugh S. Center and W. R. Dunn for Appellant.

Fitzgerald Ames, Sr., James F. Boccardo, David S. Lull and Edward J. Niland for Respondents.

WOOD (Fred B.), J.—The widow and two minor children of Kresten Jensen recovered judgment for $25,000 from Southern Pacific Company for the death of Kresten, which occurred while he was driving a truck easterly on Broadway Street, Burlingame, across the Southern Pacific tracks. He was hit by a southbound train. It was 5 p. m. on May 8, 1946.

(1) *Did the verdicts in favor of the engineer, conductor and fireman, employees of the Southern Pacific Company, exonerate the company from liability based upon negligent operation of the train? No.*

If the company's liability, predicated upon negligent operation of the train, rested solely upon *respondeat superior* and not upon its own independent tort, exoneration of the trainmen would have exonerated the company. (*Freeman* v. *Churchill,* 30 Cal.2d 453, 461 [183 P.2d 4], and authorities there cited.)

However, in the instant case, plaintiffs in one of the counts of the complaint, pleaded concurrent liability upon the part of the company and the trainmen.* Such allegations presented the possibilty of proof of independent negligence upon the part of the company. This principle was recognized in *Benson* v. *Southern Pac. Co.*, 177 Cal. 777 [171 P. 948]. "The verdict in the case was against the defendant Southern Pacific Company, and no reference was made therein to the other defendant, the motornëer." (P. 778.) The complaint was framed in part upon the negligence of the employee and the responsibility of the employer therefor but it was also alleged that the defendants were negligent in operating the train at an excessive speed at a crowded thoroughfare. "In so far as this was done without express direction of the employer, it would be liable, therefor, only on the rule of *respondeat superior*. If, however, the negligent speed was maintained by the express direction of the employer, the latter would on that account be negligent, and its negligence would concur with that of the employee who obeyed the instruction by operating at such negligent speed, and the right to recover against them would be joint." (P. 779.) It further appeared that there was evidence "tending to prove that the train was being operated on schedule time and at a rate of speed predetermined by the defendant corporation. If the verdict was based upon that view of the case, the responsibility of the parties defendant being joint, the defendant company would not be prejudiced by the failure to find against its codefendant. All intendments being in favor of the verdict, it must be considered that the jury based the same upon a finding of joint liability, unless there is something in the record which prevents that conclusion." (P. 780.) The absence of a verdict in respect to the trainman in the Benson case does not render the reasoning of the court in that case any less applicable to the pleadings and the evidence in our case, as said in *Hedlund* v. *Sutter Med. Serv. Co.*, 51 Cal.App.

---

*In paragraph III of the second count plaintiffs allege that "said defendants C. A. Maddux [engineer] and M. L. Wallis [conductor] and Southern Pacific Company, controlled, maintained and operated said southbound train, which collided with decedent's truck in such a careless and negligent manner as to cause said train to be propelled at an unlawful, excessive and dangerous rate of speed" and "by causing said southbound train to be operated at an excessively high rate of speed and above that which would be careful or prudent under the circumstances in view of the obstruction caused by the parked cars, trucks and buses, adjacent to said crossing and obscuring the vision and view of said engineer and said decedent at said crossing."

2d 327, 335 [124 P.2d 878]; "We recognize that in the Benson case no verdict was returned for or against the servant, but the case was treated by the court as one in which the failure to return a verdict was tantamount to a verdict in the servant's favor. It was cited to this effect in *Blackwell* v. *American Film Co.,* 189 Cal. 689, 698 [209 P. 999]."

We find nothing inconsistent with these views in *Will* v. *Southern Pac. Co.,* 18 Cal.2d 468 [116 P.2d 44], or other subsequent decisions in this state.

In our case, there was evidence that the company, not the trainmen, directed and controlled the speed of trains at the crossing. The engineer testified that he did not have the determination of speed; that he did not determine whether he should go 60 miles an hour past crossings; the speed boards regulated the speed of the train that he maintained; the type of crossing protection did not make any difference as to the speed he maintained; that "our speed is all regulated by speed boards." The time schedule also governed. It was prescribed by the company, not by the trainmen. According to the conductor's best recollection the speed of the train at the time of the accident was 60 miles an hour.

■ (2) *Did the superior court have jurisdiction to determine whether or not the defendant company was negligent in failing to provide crossing protection additional to that required by the Public Utilities Commission? Yes.*

The defendant company maintained at this crossing a warning device known as the Griswold, installed pursuant to an order of authorization of the Public Utilities Commission in 1934 upon application of the company for permission to make such an installation. This order was made by the commission against the background of its General Order No. 75-A which in 1939 was superseded by General Order No. 75-B, prescribing regulations for the protection of grade crossings. Section 8 of order 75-B declares that no railroad shall "remove" any form of crossing protection or "reduce" the hours during which any such protection is maintained or "substitute" any form of crossing protection for a form already maintained unless the consent for such "removal, reduction or substitution" shall have been secured from the commission, save for certain exceptions not here relevant.

It appears that the commission has given no consent to any such "removal, reduction or substitution" at this crossing at the sole expense of the defendant company. Prior to the

commission's installation of the Griswold signal in 1934, the city of Burlingame in 1930 and again in 1931 applied for orders requiring the company to install gates at this crossing. The commission granted the first request contingent upon the city's paying half the cost and the second request contingent upon the city's paying all the cost of installation. The city failed to meet those conditions.

The company contends that we have here the exercise by the Public Utilities Commission of exclusive jurisdiction for the protection of the traveling public at street and railway grade crossings "which establish *the minimum and the maximum* of care to be exercised in the matter of warning highway travelers of trains in the course of usual operations," at the very crossing at which the accident here involved occurred. The company in this behalf invokes the plenary power which the Constitution gives the Legislature to confer authority upon the commission and the exercise of that plenary power as expressed in such statutes as sections 768, 1202, 1706, 1709, 1759, 2109 and 2110 of the Public Utilities Code and interpreted in such decisions as *Los Angeles Ry. Corp.* v. *Los Angeles,* 16 Cal.2d 779, 783-788 [108 P.2d 430]; *Northwestern Pac. R.R. Co.* v. *Superior Court,* 34 Cal.2d 454 [211 P.2d 571]; *People* v. *Western Air Lines,* 42 Cal.2d 621, 630, 633-634 [268 P.2d 723]; *Holder* v. *Key System,* 88 Cal.App.2d 925, 932 [200 P.2d 98].

The fallacy of this argument inheres in the failure to distinguish between the functions respectively exercised by the commission and the court in the situation presented by the facts of this case. The overlap of function is seeming, not real. The commission acts in a legislative capacity; the court, in a judicial capacity. The commission lays down requirements governing future conduct by the company for the safety of the public at grade crossings. The court determines whether or not the past conduct of the company was in violation of duties owed by it to particular members of the public. The state, in prescribing such safety regulations (whether done by legislative enactment expressed in a statute or by action of the commission expressed in an order), has never gone so far as to say to a utility company that compliance therewith constitutes a complete discharge of its duties toward the public. The state does not undertake to foresee and declare in advance what, under all circumstances, constitutes ordinary care. Regulations of this nature lay down minimum, not maximum, requirements. (*Hinkle* v. *Southern Pac. Co.,*

12 Cal.2d 691, 701-702 [87 P.2d 349]; *Peri* v. *Los Angeles Junction Ry.*, 22 Cal.2d 111, 126 [137 P.2d 441]; *Bush* v. *Southern Pac. Co.*, 106 Cal.App. 101, 108 [289 P. 190]; *Lloyd* v. *Southern Pac. Co.*, 111 Cal.App.2d 626, 637-638 [245 P.2d 583].)

Indeed, the regulations here involved show upon their face that they are minimum, not minimum and maximum. Section 8 of General Order 75-B proscribes merely the "removal, reduction or substitution" of crossing protection devices without commission consent. It does not prohibit "additions" thereto without such consent. And section 7 of the General Order affirmatively sanctions such "additional protection" without prior consent. It requires merely that additional installations be "reported" to the commission.

■ (3) *Was it error to permit the jury to consider whether or not ordinary care required the furnishing of certain warning devices, such as a flagman or crossing gates? No.*

Defendant's complaint under this head seems to be that the question whether or not a person of ordinary prudence would have furnished one or more additional warning devices, such as a flagman or gates, presented technical engineering questions improper for submission to the jury; improper in the absence of proof of a business custom or practice of furnishing such devices under similar circumstances. That may be the law in some jurisdictions but not in California. As early as 1892 our Supreme Court held it competent for a jury to determine whether or not it was negligence for a railway company to use a "Miller hook coupling" on a caboose in connection with a "Potter drawhead coupling" on a freight car. (*Martin* v. *California Cent. Ry. Co.*, 94 Cal. 326 [29 P. 645].) In *Green* v. *Southern Pac. Co.* (1921), 53 Cal.App. 194 [199 P. 1059] (hearing by Supreme Court denied), the court held that the "jury, under the evidence, was authorized to determine that failure to have a flagman there [a grade crossing] was negligence and a proximate cause of the accident." (P. 203. See also *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679, 684 [269 P. 529]; *Peri* v. *Los Angeles Junction Ry., supra,* 22 Cal.2d 111, 120-126.) ■ "Evidence of custom in the same trade or occupation is admissible for the consideration of the jury but it is not conclusive on the question of what constitutes ordinary care. Conformity to 'the general practice or custom would not excuse the defendant's failure unless it was con-

sistent with due care.' [Citations.]'' (*Reagh* v. *San Francisco Unified Sch. Dist.*, 119 Cal.App.2d 65, 70 [259 P.2d 43].)

Defendant also complains that on this subject the jury ''was not instructed to consider whether ordinary care was used in the matter of warnings at the crossing; instead it was instructed upon the wholly immaterial matter as to whether ordinary care was used to furnish and maintain devices for the purpose of protecting travelers in general and *warning* them . . .'' This seems to us a distinction without a difference. ■ We perceive no sound reason why, in addition to defining negligence and the duty to use ordinary care, a court may not inform the jury of the various factors presented by the issues and the evidence which they may properly take into consideration, such as speed and the presence or absence of signals, flagmen and gates.

■ Defendant speaks of evidence of the use by defendant of gates at four other grade crossings in Burlingame. It objects that there was no evidence of similarity of conditions to justify the introduction of that evidence. But there was evidence that all of the crossings were over major streets in the city of Burlingame; that Broadway crossing had the heaviest vehicular and pedestrian traffic; and that the amount of traffic going over a crossing has a very important bearing upon the determination of the type of crossing protection to be used. Identical conditions will rarely be found. Substantial similarity is normally sufficient. Determination of relevancy, including similarity of conditions in such a case, is primarily the function of the trial judge. We find no sufficient basis for disturbing his decision in this instance. The evidence had some tendency to show custom or practice and also the practicability and feasibility of installing and maintaining gates at such crossings, including Broadway.

Defendant speaks also of the impossibility of the creation, by custom or usage, of a duty to maintain gates at Broadway when a duty to maintain Griswold signals thereat is imposed by order of the Public Utilities Commission. That reflects a misconception of the scope of that order, discussed earlier in this opinion. ■ Moreover, custom or usage does not create a duty. It is merely a factor for consideration of the jury in determining whether ordinary care was exercised.

■ (4) *Was it prejudicial error to admit in evidence the applications of the city of Burlingame to the Public Utilities Commission requesting added safeguards at this crossing? No.*

The applications of the city of Burlingame to the Utilities Commission for an order requiring the railway company to install and maintain gates at this crossing, including Broadway, were, as stated by the court "not offered for the truth of the statements contained therein, only to show that the city of Burlingame had notified the railroad that they deemed the crossing to be dangerous." Thus limited, they tended to show that the defendant company had been put upon its inquiry concerning the potentially hazardous character of this particular crossing. As such, they seem relevant.

The company says that it was chargeable with such knowledge; hence, this evidence was unnecessary, and therefore irrelevant, citing *Martindale* v. *Atchison, T. & S. F. Ry. Co.,* 89 Cal.App.2d 400, 412 [201 P.2d 48]. In that case the defendant had admitted knowledge of previous accidents mentioned in the proffered letters. In the instant case, there was no similar admission on the part of the defendant. Indeed, it denied the existence of any unusual hazard at the Broadway crossing. Moreover, while the defendant was probably chargeable with knowledge of the physical character and condition of its property, it was not necessarily chargeable, to the same degree at least, with knowledge of traffic conditions, including the volume and congestion of traffic at this crossing, which contributed materially to the hazardous condition in question. Thus, it has been held that when the existence of danger is due to causes other than the activity of the defendant, it is necessary to prove that he had actual or constructive notice of that danger. (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841].) ▮ The degree of care necessary to constitute ordinary care is measured by reference to the circumstances of danger and risk known to the obligor; hence "it is usually . . . permissible to prove any fact, *known to such person at the time,* which would have a reasonable tendency to increase or decrease the risk and danger of a particular course of action." (*Bresee* v. *Los Angeles Traction Co.,* 149 Cal. 131, 136 [85 P. 152, 5 L.R.A.N.S. 1059]; emphasis added.) In *Marchetti* v. *Southern Pac. Co., supra,* 204 Cal. 679, 684, the court attached significance to the fact that the city authorities had requested the railway company to install an automatic crossing signal. Moreover, a party is not limited to making out a mere prima facie case. (*People* v. *McMonigle,* 29 Cal.2d 730, 742-743 [177 P.2d 745].)

Under the circumstances, we see no sound reason why

plaintiffs should be precluded from showing that defendant had in fact been put upon its inquiry concerning such hazardous condition.

■ (5) *Was there prejudicial error in the instructions relative to decedent's duty to exercise due care? No.*

The court advised the jury: "If you find that what Kresten Jensen did in this case was what an ordinarily prudent person would have done under like circumstances, you will not find him guilty of contributory negligence even though you find that he did not stop, look or listen or did not alight from his truck." (No. 37.)

The court also read to the jury the text of subdivision (a) of section 575 of the Vehicle Code and instructed them in the terms of instruction No. 149 of B.A.J.I. (3d rev. ed.). The court thereby instructed that failure to stop when a clearly visible signal device gives warning of the immediate approach of train raises a presumption of negligence, a presumption which might be overcome by evidence showing that the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence.

Defendant contends that the first of these instructions (No. 37) is erroneous and that the two are contradictory, making it impossible to know which one the jury used and applied in finding upon the issue of contributory negligence.

Instruction No. 37, taken alone and literally, is erroneous and presents a seeming contradiction with No. 149. However, when we read both instructions in the light of other instructions* on the subject, we do not think the total effect was misleading.

---

*Among the other instructions were these: the tracks of a railroad such as those here involved are in themselves a warning of danger; before one drives an automobile upon the space which would be occupied by a train if it were to pass over such tracks it is his duty to use every reasonable opportunity to look and listen for the approach of a train on the tracks. If the view of the tracks is obstructed, greater caution is required in approaching them; if the obstruction is such that one cannot obtain without stopping a reasonable assuring view of the tracks in both directions before entering the dangerous track area, then, ordinarily it is his duty to stop, look and listen for the approach of a train, and if necessary, alight from his vehicle, go forward a few steps and take advantage of the view thus afforded. If a person nearing a railroad crossing saw or heard a train rapidly approaching but failed to heed the warning of danger or endeavored to cross the tracks immediately ahead of the train, the law would hold him guilty of contributory negligence. If deceased without adequate excuse or justification violated a standard of conduct established by express statute for the operators of motor vehicles approaching a railroad grade crossing, he was guilty of contributory negligence as a matter of law without any

(6) *Was it prejudicial error to refuse defendant's requested instruction concerning excuse or justification for the violation of a statute? No.*

In connection with the text of section 575, subdivision (a), of the Vehicle Code, the court gave instruction No. 149 of B.A.J.I., as we have noted. The legal effect of a presumption was also appropriately explained to the jury, in the same terms as was done in *Combs* v. *Los Angeles Ry. Corp.*, 29 Cal.2d 606, 609 [177 P.2d 293], and in *Ornales* v. *Wigger*, 35 Cal.2d 474, 478-479 [218 P.2d 531].

Defendant assigns error because B.A.J.I. No. 149 lacks a description of the kind of facts that will excuse the violation of a statutory standard, claiming that defendant made a proper request for such a description.

B.A.J.I. No. 149 is "a complete and correct statement of the law" and "when combined with the instruction explaining the legal effect of a presumption, clearly states the applicable principles of law" (*Combs* v. *Los Angeles Ry. Corp., supra,* 29 Cal.2d 606, 610) but "the fact which will excuse the violation of a statute has been defined by the court as one resulting 'from causes or things beyond the control of the person charged with the violation' " (*Satterlee* v. *Orange Glen Sch. Dist.*, 29 Cal.2d 581, 589 [177 P.2d 279]).

 It is not error to refuse an instruction which is incomplete because its omits the element of excuse or the definition of the facts which will excuse the violation of a statute. (*Combs* v. *Los Angeles Ry. Corp., supra,* 29 Cal.2d 606, 609; *Tossman* v. *Newman,* 37 Cal.2d 522, 524-525 [233 P.2d 1]; *Boots* v. *Potter,* 122 Cal.App.2d 927, 937 [266 P.2d 176].) But when such an instruction (B.A.J.I. No. 149, for example) is given, a party who desires a more specific or elaborate instruction (such as a definition of the facts which will justify or excuse a violation) it is his duty to prepare

other proof of his failure to exercise due care. If the deceased took no precaution for his own safety as he came up to and attempted to cross the tracks and his failure to do so was the proximate cause of his death, he was guilty of negligence as a matter of law. Although the law never waives the duty to exercise reasonable care before and in the act of crossing railroad tracks, it does not require that such care be exercised in exactly the same manner under all circumstances; conditions at hand may invite or even require a variation from the pattern of conduct normally required; in determining whether deceased was negligent, you should consider the conditions existing at the time and place and ask whether they were such as would have caused a reasonably prudent person to believe that there was no danger or that there was no need to take all the precautionary measures one should take in approaching and crossing railroad tracks.

and request a suitable instruction therefor. (*Ornales* v. *Wigger, supra,* 35 Cal.2d 474, 478-479; *Kuehn* v. *Lowthian,* 124 Cal.App.2d 867 [269 P.2d 666]; *Gioldi* v. *Sartorio,* 119 Cal.App.2d 198 [259 P.2d 62].)

Defendant claims it met these requirements when it requested the following instruction, which the court refused:

"The Court instructs you that a presumption of negligence or contributory negligence arises from the violation of an express statute, such as the provisions of the California Vehicle Code, which I have read to you. In the absence of sufficient evidence in excuse or justification to balance the resulting presumption of negligence or contributory negligence, the presumption of negligence or contributory negligence is conclusive. The burden of producing evidence in excuse or justification rests upon the violator, or upon those claiming damages for his death.

"Moreover, it is not a sufficient excuse or justification for the violation of an express statute that it resulted by reason of some other negligent act upon the part of the violator, such as his failure, upon approaching a railroad grade crossing, to observe other precautions which a reasonably prudent motorist woud have observed under the conditions which then and there existed.

"A showing of excuse or justification is not sufficient unless it shows that the violation resulted 'from causes or things beyond the control of the person charged with the violation.' "

We do not think this request met the requirements. The proffered instruction is not clear and adequate in all respects. It omits the customary expression "if you find," the absence of which tends to suggest there has been a violation; it refers to evidence in excuse or justification to "balance" the presumption, instead of to "overcome," or its equivalent; the next to the last sentence tends to assume the "violation" of a statute and a "failure" to observe other precautions, and tends to obscure the test which is clearly and correctly stated in the last sentence of the instruction. "A court is under no duty and indeed should not give an instruction which, although technically a correct statement of the law, is so worded as to be confusing or misleading, or which by construction or implication may appear to indicate that a given rule of law applies only to one of the parties when it in fact applies equally to both." (*Kuehn* v. *Lowthian, supra,* 124 Cal.App.2d 867, 873; hearing by Supreme Court denied.)

 The trial judge, confronted with defendant's request for this instruction and plaintiffs' request for B.A.J.I. No. 149, naturally chose the latter as the more adequate and more clearly expressed and one which had been approved by the Supreme Court. At the moment of making that selection, it quite conceivably did not occur to the judge that the last sentence of defendant's instruction was of special or critical significance to it, especially in view of another of defendant's instructions which by its very brevity and clarity of expression emphasized and focused attention upon the element of "excuse or justification." This instruction the court gave. It reads as follows: "If you find from all the evidence that at the time and place of the accident in question the deceased, without adequate excuse or justification, violated a standard of conduct established by an express statute for the operators of motor vehicles approaching a railroad grade crossing, then the deceased was guilty of contributory negligence as a matter of law without any other proof of his failure to exercise due care."

Here we have defendant requesting and obtaining an instruction on the effect of a statutory violation when committed "without adequate excuse or justification" and no mention made of the kind of circumstances which might "excuse or justify."

Under these circumstances we do not consider that defendant appropriately and adequately presented to the trial judge its desire for a suitable qualifying instruction concerning the circumstances which will excuse the violation of a statute.

 (7) *Did plaintiffs' counsel commit prejudicial misconduct during his closing argument to the jury? No.*

In his argument to the jury defense counsel stressed the time, almost a year, that elapsed between the date of the accident and the filing of the complaint and (according to plaintiffs' brief and not denied by defendant) challenged plaintiffs to explain the delay.

In response, plaintiffs' counsel said to the jury: "Now, he (Mr. Center) asked why did it take so long to bring suit. He asked me something that might cause me to go outside of the record in answering that. Let's take a hypothetical situation now. Of course, we had no evidence supporting it in this particular case, but let's take a hypothetical situation, let's take an injury or a death, any of you lose a loved one as a result of an accident, you consulted a lawyer, you pre-

sent the facts to him. He enters into an agreement of employment with you and undertakes the prosecution of your case on your behalf and on behalf of your children, if there are other heirs at law. Then the other side, acting through adjustors such as Mr. Blake, who has been in the courtroom all during this trial, comes to the attorney representing those heirs and settlement negotiations commence. Suit is usually filed——''

Thereupon, defendant's counsel objected, cited this statement as prejudicial misconduct and asked for a mistrial and that the jury be instructed to pay no attention to these remarks of counsel. The court ruled: ''Well, I have an instruction here that I will give to the Jury, that any statement of counsel is not evidence and you are to decide the case only from the evidence produced by the witnesses, and also this last statement that was objected to of Mr. Lull's will be stricken from the record, and the Jury is instructed to pay no attention to it.''

In view of this ruling and admonition to the jury it is improbable that the quoted statement of plaintiffs' counsel resulted in a different verdict than would have been given had no such statement been made. ''It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.'' (*Tingley* v. *Times Mirror Co.*, 151 Cal. 1, 23 [89 P. 1097]. See also *Albaugh* v. *Mt. Shasta Power Corp.*, 9 Cal.2d 751, 778 [73 P.2d 217], and *Drotleff* v. *Renshaw*, 34 Cal.2d 176, 180 [208 P.2d 969].)

 This same contention was presented to and overruled by the trial court upon defendant's motion for a new trial. That is a determination that the challenged statement was made in good faith and did not prejudice the defendant, a determination not to be disturbed unless plainly wrong. (*Lafargue* v. *United Railroads*, 183 Cal. 720, 724 [192 P. 538]; *Haskins* v. *Southern Pac. Co.*, 3 Cal.App.2d 177, 193 [39 P.2d 895].)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 22, 1954, and appellant's petition for a hearing by the Supreme Court was denied January 19, 1955.