C. A. CAIN, Appellant,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

No. 17539.

United States Court of Appeals
Fifth Circuit.

May 22, 1959.

Rehearing Denied July 6, 1959.

Lomax B. Lamb, Jr., Marks, Miss., for appellant.

Sherwood W. Wise, James L. Byrd, Jackson, Miss., J. L. Roberson, Clarksdale, Miss., for appellee. J. H. Wright, Vice President and Gen. Counsel, John W. Freels, Gen. Sol., Chicago, Ill., Byrd, Wise & Smith, Jackson, Miss., Roberson, Luckett & Roberson, Clarksdale, Miss., of counsel.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the plaintiff from a judgment based on a jury verdict for the defendant railroad in a crossing accident case. Aside from attacks on the weight of the evidence there are two asserted errors of law on which appellant seeks a reversal.

The appellant is suing for the death of his son who was instantly killed, together with three companions, when the automobile in which they were riding was struck at a public railroad crossing in the small unincorporated community of Davenport, Mississippi. On a record that does not contain a transcript of the evidence, there are nevertheless pleadings, photographs, a plat and depositions that permit the following statement of the factual situation at the time of the accident.

Cain, the deceased, was not a resident of the community. He was driving in a northerly direction alongside the tracks of the defendant railroad. The tracks were elevated some 5 to 6 feet higher than the gravel road which paralleled the track for some 1,000 feet before the crossing in question. As the automobile approached the crossing the road divided into a broad Y; the right hand arm turned at almost a right angle up an incline of 5.5 feet to the tracks, about 33 feet away; the left arm turned at an angle of approximately 55 degrees. Thus, an automobile driver taking the course which Cain was using would come directly into the railroad crossing some thirty feet away if he made a right turn. There was no railroad stop sign facing down this northerly road. There was a sign on the right hand side of the road but its front, with the required lettering, was built to face the road constituting the left arm of the Y. A person driving north as Cain was had only the end of the board sign, about an inch in thickness, facing him. There was no traditional railroad cross arm sign. The Cain car turned right and onto the tracks. The engineer testified that when he first saw the car it was coming onto the tracks; the construction of the diesel locomotive obstructed his view close in to the left side; the fireman saw it first and called to him; he already had his

horn blowing and his bell ringing; he put on the brakes and they started to "take hold" just as the engine struck the car. The fireman testified that he first saw the car turning and coming up onto the tracks and he saw the automobile could not clear the tracks and called to the engineer, who immediately applied the brakes. The train was traveling at the rate of 58 miles an hour.

As Cain drove north the train was approaching from his right rear.

The Mississippi statute requires a stop sign fifty feet away from the crossing to "insure warning of the proximity of the crossing." [1]

The photographs make it clear that a person driving north as Cain was might make a right hand turn around the sign and enter the crossing without having ever had notice that he was entering a railroad crossing.

There was no visual warning of the existence of a railroad crossing until the presence of the tracks themselves gave notice of that fact. By that time the driver might reasonably be expected to be within a few feet of the tracks.

The first basis of appellant's attack on the trial court's judgment is its failure to permit the plaintiff to introduce into evidence a photograph of a railroad stop sign used by the defendant railroad at a crossing "somewhat similar to the crossing at issue in this case." [2] The theory on which the appellant contends the photograph was relevant is that it depicts an act of the defendant in the discharge of its duty of care to the public in satisfaction of the requirements of statute and is therefore admissible to show that the defendant itself had recognized a heavier burden as being required in the discharge of its duty of warning the public in similar circumstances. The sign shown in the tendered photograph in use where two roads converge and cross the railroad at a single crossing has two faces—one bearing the statutory words facing down each of the two roads. Here, it will be remembered, there was no sign facing down the road Cain was driving on.

In denying a subsequent motion to appeal in forma pauperis the trial court stated as to this ground:

"The other fact which was not in dispute, as I recall the evidence, was the location and size of the Mississippi Stop Law sign. With respect to that, as I recall, I *positively* instructed the jury that the location of the sign was negligence.

"I further instructed them that if they felt that that negligence, from a preponderance of the evidence, was the proximate cause of the collision, they *should* find their verdict for the plaintiff."

At another point in the discussion the court said substantially the same thing.[3] This would have been a correct instruction to the jury, because in a comparative negligence state like Mississippi any negligence of the plaintiff would merely reduce the damages recoverable.

Reference to the court's charge to the jury discloses that it did not "positive-

1. The language of the section is as follows:

"§ 7775. Railroads to erect signboards. "Every railroad corporation or company or person or persons operating or controlling any railroad track intersecting a public road or street at grade crossings shall erect and maintain a signboard on each side of the railroad track not less than ten feet from the ground to the top of said sign on the right side of the road, forty inches by fifty inches, fifty feet from said crossing, which shall be painted with red lettering to insure warning of the proximity of the crossing, and notice to stop said vehicles, with the following:

"Mississippi Law. Stop. * * *."

2. This is the manner in which the trial court described the crossing at Sledge, Mississippi, the photograph of which was sought to be introduced.

3. "I told the jury in my charge that the location of the sign was negligence, and if they felt from a preponderance of the evidence that the location of this sign was the proximate cause of the accident, they should find for the plaintiff."

ly" or even *expressly* charge the jury that the failure to place the sign correctly was negligence. The charge was:

"From the evidence in this case it is without dispute that the railroad company failed to erect and maintain a 'Mississippi Law Stop' sign such as I have mentioned to you, at its proper distance, which I have also mentioned, from the crossing. [Note: Without stating that this failure amounted to negligence per se, the court then continued]. If you find as a fact that this negligence on their part proximately contributed to the collision or proximately caused the collision, then you *may* find your verdict for the plaintiff." (Emphasis added.)

This, of course, in light of what has been said above, would be an incorrect charge even though the court had expressly said that this failure amounted to negligence by the defendant.

■ No exception was taken to this charge and we thus do not review it as alleged error, although its effect may well have had a decisive role with the jury. We consider it only in connection with the expressed view of the court that if it erred in refusing admission of the photograph, such error was cured by the charge.

■ We thus come to the question whether the photograph should have been admitted in evidence. We conclude that it should have been, and that it was error to exclude it. This error was aggravated by the treatment given in the court's charge to the absence of a warning to vehicles on this north bound road. In the charge quoted above, the court said only that it was without dispute that the required sign was not at its proper distance from the railroad. The proof showed much more. It showed that as to the traffic moving north on this road there was in effect *no sign at all*. The photograph showed what this same defendant had done to meet this unusual situation under somewhat similar circumstances elsewhere. It showed that

the railroad had erected two poles with the required sign on each of them turned at right angle to each other so as to face in the direction of oncoming traffic on each of the two roads. Moreover, the charge did not instruct the jury with the certainty or clarity that was demanded that this failure was negligence, which, if a cause of the injury, would demand some verdict for the plaintiff. It only *authorized* a verdict.

The relevancy of the photograph is that it shows acts of this same defendant in discharging its obligation to insure the warning of the public as required by statute. It is similar to an admission against interest. Of course, this is not a case in which a party seeks to show conditions maintained by others as evidence of the proper standard of due care, although in the Mississippi case of Southern Railway Co. v. McLellan, 80 Miss. 700, 32 So. 283, the court held that it was error for the trial court to exclude evidence of the use of slag ballast by other railroads when the issue of negligence related to the contention that the brakeman was injured because of negligent failure to furnish a safe place to work. The comment from 20 A.Jur. 286, quoted by appellee, is not applicable here. Nor is Wilkinson v. City of Jackson, 177 Miss. 414, 170 So. 901, authority for appellee's contention, the evidence there excluded being only in the nature of self-serving evidence as to conduct by the defendant. We find no Mississippi case dealing with this precise subject, but see Jensen v. Southern Pacific Co., 129 Cal.App.2d 67, 276 P.2d 703; and Deshotel v. A. T. & S. F. Ry. Co., 144 Cal.App.2d 224, 300 P.2d 910. We conclude that this evidence was relevant and material, and in light of the failure of the court's charge to give the full effect that the evidence itself might be expected to have in enlightening the jury, its exclusion was prejudicial error.

■ The appellant also contends that the trial court erred in not giving a requested affirmative charge substantially to the effect that as a matter of law this was a hazardous crossing and that under

the circumstances there present the defendant was negligent as a matter of law for running at a speed of 58 miles an hour at the crossing. Reference to the case of Donald, Adm'r, v. Gulf, Mobile & O. R. Co., 220 Miss. 714, 71 So.2d 776, 777, indicates that the Supreme Court of Mississippi did in that case hold as a matter of law that a crossing was unusually hazardous. The court seemed to set the standard as whether, under the facts before it, it could determine that compliance by a driver with the requirements of Section 7776 of the Mississippi Code of 1942 [4] would necessarily prevent a collision. Holding there that it "would not *necessarily* prevent a collision at this point," the court said: "Obviously this was a very dangerous crossing." Having arrived at that conclusion the court then said:

"The proof was conclusive that the crossing was a highly dangerous one and that the speed of the train was 55 miles per hour. Under such circumstances there is no escape from the conclusion that the operation of the train over that particular crossing at a speed of 55 miles per hour constituted negligence."

The court set aside a jury verdict for a defendant and sent the case back for a new trial.

While we would be inclined to agree that the complete absence of an effective warning or stop sign, coupled with the other circumstances, i. e., the road on which Cain was travelling was parallel to the track so that a train might, as did this one, approach at high speed from the rear of a vehicle and at a level with the top of the automobile, and thus be out of sight until the turn onto the crossing was completed, would probably make this crossing as dangerous as that in the Donald case, we cannot reverse for failure of the trial court to give the requested instruction. Here, too, there was a failure to object to the court's charge and failure to give the requested charge, although the court invited counsel into chambers to make any objections desired.

We mention the point solely as it bears on the materiality and prejudicial effect of the exclusion of the photograph from evidence.

Although appellate courts recognize that there must be some degree of latitude given to the trial courts in ruling on the admissibility of evidence, we think that the uncontroverted facts demonstrate the existence, as to any automobile driver in the situation facing Cain, of what the Mississippi Supreme Court has called a "highly dangerous" crossing. We conclude, therefore, that the exclusion of evidence from which the jury might infer that this same defendant had used better means in a similar concurrence of roads to "insure warning of the proximity of the crossing" was reversible error.

We have carefully considered the contention of appellant that the court erred in refusing certain discovery efforts by appellant. Without in any way passing upon the propriety of any future effects by appellant, we hold that the trial court did not exceed its discretion in the orders heretofore made by it in this respect.

The judgment is reversed and the case remanded for a new trial.

HUTCHESON, Chief Judge.

I concur in the result.

---

4. This section requires the operator of a vehicle to stop not less than 10 feet and not more than 50 feet from a railroad track on a public crossing.